Good morning, Your Honors. Good morning. Alexandra Morales, a peer for petitioners, Marilu Gonzalez and her daughter, Nancy Gonzalez. I would like to reserve two minutes of my time for rebuttal. I believe that the issues in this case are two, mainly, whether the harm suffered by petitioner was an account of a protected ground, and second, whether the harm suffered by her rose to the level of persecution. The judge found on both counts that she had not suffered a harm and also that it was not an account of a protected ground. I would argue that the harm suffered by petitioner was an account of a protected ground because she was specifically targeted because she was a woman. Her testimony and the evidence in the record indicates that only the women in her family were the ones targeted for extortion and also threatened with harm. I thought your protected group was Salvadorian single mothers. That's correct, Your Honor, and the reason for that was because her evidence indicated she was a single mother taking care of her two children and also taking care of the children of her sister. We indicated as such because it was specific as to her and essentially, but also within that, just women as a whole are also part of that same group. Perhaps it was a mistake on my part because I represented at the immigration court level not to also indicate that it would be Salvadorian women as well as Salvadorian single women. In part, the reason we had indicated single was simply because there was no male figure, there's no husband, no cohabitant that perhaps could have provided a buffer as far as protection within a very chauvinistic society that discriminates against women. But I think the evidence still indicates that she was targeted because she was a woman and her niece was also targeted in the same way and other women in their community were targeted and we submitted articles that indicate that women traditionally have been discriminated and targeted for violence, not just by criminal groups, but also in some instances by government groups and also just society as a whole. That was not mentioned though and before the immigration judge, there was no reference as Salvadorian women as being a particular social group at that time. Was there any such reference before the immigration judge? No, you're correct. I think what we listed, like I said, it's basically Salvadorian single women and specifically because the petitioner was a single mother taking care of her children, so we're trying to be more specific as to her group. But I would argue that still would qualify for recognition as a particular social group within the society in El Salvador and that as such, she should be considered to have been targeted on that account. Can I ask you, the government makes this point in its brief and I just wanted to get your response. They say the IJ, whether rightly or wrongly, found your proposed social group before the IJ, single Salvadoran mothers, to be not cognizable and so that's a case dispositive finding against you. You need to convince us that that's incorrect and in your brief, the government says not only did you not challenge that ruling, you almost conceded that it was probably correct and then you shifted to a new proposed social group that had not been exhausted before the IJ or the BIA. So what's your response to that argument? With regards to that, what I would say is that I think what I was trying to do was like an argument, assuming for the sake of argument, that that group is not found to be a particular social group. I was trying to argue that perhaps the Salvadoran women would be, but again I would go back to the argument that the Salvadoran single women within the Salvadoran society is a cognizable group in that they're recognized by society as women, single, I'm sorry, your honor, Salvadoran single mothers, mothers raising their children on their own where there's like no male figure in the household. I think they would be recognized within their community and also within society as a whole and these groups that targeted her would also distinguish them and target them for that reason. I think what the judge did essentially was just to dismiss the idea that such a large group, because it could be a large group, could qualify as a particular social group. I think this happened within, at the time, within I believe, I might be speaking, but when such a group was being, was not being recognized and I think that like since that time the courts have gone back and essentially indicated that it could be a group if analyzed and if the facts of the society within which it happens are analyzed and I think the judge didn't do that. She didn't really look at the country condition documents that were submitted, for example, to see how women are treated in El Salvador. I mean I think it happens the same way with the persecution argument. She discounted it, said like you're just being targeted for criminal reasons, but if you look at everything that was proposed, she was being targeted because she was a single mother trying to raise kids on her own and if you look at the beginning of the testimony also, the first person that was targeted was her niece, a single young woman and then they came after Petitioner, who was essentially the mother figure for the niece. They basically recognized her as a single mother in the household and they basically came after her and started threatening her and basically using her daughter also as a way to try to intimidate her and attack her. So I think in that sense, I think the judge did not really pay attention to all the evidence that was presented nor the testimony and perhaps again, like I indicated, perhaps we could have specified Salvadoran women as a group, as a separate group, but I believe that Salvadoran single mothers still qualifies as a particular social group within the Salvadoran society. So I would argue that the court should still find that to be a particular social group. With regards to the persecution argument, essentially the judge also found that there was no persecution because she said that she was not physically attacked. There were no physical confrontation, but if you notice, if you look at the testimony that was submitted and the evidence also in the turn off her phone, she tried to change her phone, but they still came after her. They still kept calling her and then they made it obvious and clear that they could find her and they could target her and they could hurt her whenever they wanted to. They sent their photos of her daughter when she was going to school. They would call her and tell her, we know where you were, we know where you're at. So they made it clear they could come to her at any point in time. She essentially was under a terror for about a year or so. And we would argue that also with the evidence that shows that other women have been targeted for violence by gangs and other criminal groups, that those are threats that could be carried out. And I think that based on that and their totality of circumstances analysis, that should be found to rise to the level of persecution. And I think the judge, I think, I see that my time is up. Would you like to save some time for rebuttal? Yes. Okay, you can have almost two minutes there for rebuttal. Thank you. Let's hear from the government. Good morning. May it please the court. Rodolfo Saenz for the U.S. Attorney General. I'd like to begin just by reiterating that there are four independently dispositive bases to deny the petition as to asylum and statutory withholding of removal. My learned friend talked about two, but there are four for this court to address. And the same goes for cat protection. There are two independently dispositive findings there as well. To go towards my opposing counsel's points, the particular social group for review for this court is Salvadorian single mothers. That was a strategic decision, as acknowledged, that was made below. There is no precedent at this point for the decision that was made. And under this court's precedent in Díaz-Reynoso, which deferred to matter of WYC, we have to look at that court as analyzed below. And the entire case was analyzed based on that group being the claim for relief and protection. If I may, if there are no further questions. Can I ask? I mean, it just seems like the IJ's ruling on that score is probably wrong, right? I'd love to hear your defense of why single Salvadorian mothers is not a cognizable particular social group. But certainly the ground that, well, someone could leave the group by getting married, I don't think that could possibly be valid. You can't expect women to, they shouldn't, women certainly shouldn't be expected to get married to avoid persecution, right? Especially if they're having to marry the father of their child that they don't want to be with. I mean, that just seems like an incorrect ruling. So I grant you that the Petitioner's Council didn't make a robust attack on that ruling in the opening brief. But what is your defense of the IJ's ruling as to why that particular social group is not cognizable in the first place? Yes, Your Honor. So our position, we didn't defend the particular social group finding on the merits in this case. But if the court would like me to engage, I would draw the court's attention to the social distinction finding, which the immigration judge made and seems to have support based on the record, as I personally haven't found a single mention of Salvadorian single mothers in the country conditions. There is testimony that the petitioner made that she was being targeted because she was Salvadoran women and a single mother. But that wouldn't be sufficient to compel a conclusion that the society at large recognizes it as a group set aside from others. There are no further questions on the particular social group. I'd just like to briefly address some of my learned friends' points on nexus. There is insufficient evidence to suggest that the petitioner was targeted as a result of her being a member of the group that was raised below. When asked why they were asking for money, she couldn't provide another reason. She just said they were just demanding money. That's in her testimony, in her declaration at 299. She said, if I return to where I used to live, I would be harmed because I refused to pay. There is the threat that was made to her daughter. There is also the niece. But the only testimony that we have was that they were always asking for money. There's insufficient detail to know why the niece was being targeted aside from that. And there is evidence in the record with respect to endless threatening calls and the fact that there was indication of active knowledge of her location and indeed photographs of her daughter. Isn't that correct? Correct, Your Honor. Was there not a finding by the immigration judge that certainly El Salvador is attempting to combat violence and corruption, but that it's undisputed that El Salvador has not effectively enforced those laws? I think the actual wording of the immigration judge was, have not effectively enforced those laws, correct? Correct. All right, okay. So there's a fair amount of specificity here with respect to not just generalized violence. There's great specificity, it seems, in terms of, indeed, the record reflects that a neighbor of hers actually was kidnapped and raped, correct? Isn't that correct? Yes, Your Honor. In the same neighborhood? In the same neighborhood. But the only testimony that we have was that she was targeted after she reported to the police. So the suggestion there is that there was more of all that we know is that she was a woman, and that would be insufficient to compel the conclusion that it was because of her membership in a particular social group. Well, I'm more, I quite frankly, I was more addressing the cat claim, quite frankly, in terms of... Oh, my apologies. No, I'm sorry, it's my mistake, but I'm just saying in terms of putting aside the matter of the particular social group and the asylum and the withholding with respect to the matter of the cat relief, I thought you were approaching that, and I'm sorry if I'm wrong. The applicant for cat relief, obviously, must show that torturers would be committed with the consent or acquiescence of the government, and the immigration judge actually found her testimony to be credible on many of these points. Yes, the immigration judge found her credible. Before we get into cat determination, I'd like to briefly touch on past persecution and future fear persecution, which together is an alternative dispositive basis for asylum and statutory withholding of removal. My counsel mentioned that there were the threats ongoing, that she received a picture of her daughter, that they testified that they knew where she was, that the immigration judge here acknowledged that the case doesn't fall into one of the small category of cases where threats are sufficient. Here, the IJ specifically mentioned that the threat stopped once she left to the United States, that she never experienced any physical harm, there were no face-to-face threats, so we don't have a situation like Castellana, Zatanna, where there was a gun pointed in person at the person's head. It's more of a situation like Villegas, Sanchez, where there was text and pictures being sent to the petitioner, but the petitioner was harmed physically or they stopped after that. She also left to the United States, so our argument would be that the immigration judge here acknowledged various circumstances dealing with the threats and found that it was insufficient to fall within that small category of cases. But you must have thought they were serious enough that she fled her country. Correct, Your Honor. She believed that they were. But if you look at all the circumstances that took place at the time, I mean, this is a mother of a child, and there seems to be serious... The IJ believed her? Yes, she was found credible, and I think it comes down to the weight, the totality of the expressly talk about every single part of the circumstance here, but the immigration judge didn't need to. And if you look at the bulk of the evidence, like I said, there was no physical harm that ever came. The family members have remained safely. That should be enough to find that determination. I think you had one other point? Yes, one final point on the fear for future persecution. Here, again, the immigration judge acknowledged that there were no actual acts made on the threats. There were no harm. She acknowledged that gang violence is prevalent and found, based on the bulk of the evidence, that there was no individualized risk. And indeed, there are other members of society being targeted by gangs, outlined in the country condition reports. Witnesses, for example, police officers who are engaged in confrontations. We have transgender individuals. So the bulk of the evidence there would suggest that there is a generalized risk, and there was an insufficient showing to show that it was a particularized threat. I see that I'm approaching the end of my time, and I will just briefly touch on determination as well. We have similar reasoning made by the immigration judge there. There was no particularized threat of torture. The threat stopped when she left. There was no physical harm, and therefore, no... She left. Immediately after the neighbor was kidnapped and raped, she left with her daughter, correct? Not immediately, Your Honor. That occurred... Pretty quickly thereafter, did she not? The neighbor was attacked in early 2016, and she left in, I believe, March 2016. So it was a couple months difference. A couple months. Right. Yes. And I think this court in Bringas-Rodriguez, the 2017 opinion of the Ninth Circuit here, talks about the de facto reality of whether the state is able and willing to provide protection. And that certainly should be incumbent upon us, should it not be? Correct, Your Honor. And there are other cases, too, that are important here. For example, in Quintanilla-Diaz, where they found... This court found that there were insufficient evidence to show that gangs were acting in concert with the police, that the police was therefore involved in other acts of violence. I think it seems to me the record is quite clear that the immigration judge noted that it's really undisputed with respect to issues of acquiescence of the government in El Salvador as opposed to other Central American countries. And it was also undisputed that even though there's been some attempt to combat, I think the language was combat violence and corruption, that El Salvador, in the view of the immigration judge, has not effectively enforced these laws. That was the wording. Isn't that not correct? Correct. And that there was evidence that they were addressing corruption and gang violence. May I ask you just one or two questions off, sort of, outside of the record? Sure. So when I looked at this record, Miss Gonzalez-Escobar and her daughter, I didn't get the impression that she's got any prior convictions or anything. Is that right? Correct. Has the government met with counsel for them about maybe possibly some It seems like this would be the kind of case where prosecutorial, and I know you're not responsible for whether or not there should be prosecutorial discretion, but have you considered that? I mean, and would, you know, we have a really good mediation program. Yes. We're in agreement there. We actually exchanged emails this summer as we saw that the case was scheduled for argument. And I inquired what efforts had been made, what interests there was, and that seems to be a client decision, in part because of the backlog that's happening with PD. But it definitely crossed our consideration, and there is a presidential executive order addressing particular social groups. So we are sympathetic to those kinds of concerns. Well, I'll ask counsel for the petitioners as well. But thank you. Thank you, Your Honors. To address Your Honor's question, I mean, we did discuss prosecutorial discretion. Part of the problem is in the way that it's being managed with some litigation that's been ongoing in the last few months. The way that they're being processed, they're taking up to two years to try to evaluate some of these requests, and a lot of times it depends on whether there's alternative forms of relief available to the petitioners. So that's where it's sort of, you know, gotten stuck and hasn't moved anywhere. Going to... Well, maybe our mediation office could help expedite that. Yes, that's perhaps that's something we can, counsel and I can discuss, and perhaps we can try to do that. To address briefly the whole social distinction, as I argued, and I argued in the brief, I think there is a social distinction in terms of the group that's being proposed. So during single mothers, you know, I think the documents that we submitted sort of like support that in terms of the fact that women, girls are being targeted for violence and that often, as Your Honor pointed out, the government is unable or unwilling to do anything to protect women. I think also with regards to the totality of circumstances as far as the persecution argument, and also in terms of particular social group argument, I think the judge did not consider all the circumstances that are present in this case. And I think that if she had, she would have found that the respondent did qualify for asylum and withholding of removal, and perhaps also convention against torture protection. And with that, I would yield the rest of my time. Thank you. Thank you, Mr. Morales. Thank you, counsel, Mr. Sainz. Thank you very much. The matter is submitted at this time.
judges: PAEZ, WATFORD, Bennett